IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JOHN DOE,

        Plaintiff,

v.             //    CIVIL ACTION NO. 1:16CV72
                          (Judge Keeley)

MYLAN PHARMACEUTICALS, INC.,

        Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENIING IN PART DEFENDANT'S MOTION TO STRIKE, OR IN THE
ALTERNATIVE, MOTION TO DISMISS AMENDED COMPLAINT [DKT. NO. 22]
AND DISMISSING COUNT III WITH PREJUDICE**

Pending before the Court is the motion to strike, or in the alternative, motion to dismiss the amended complaint filed by the defendant, Mylan Pharmaceuticals, Inc. ("Mylan") (dkt. no. 22). For the reasons that follow, the Court **DENIES** the motion to strike the amended complaint, but **GRANTS** the motion to dismiss Count III of the amended complaint.

**I. STATEMENT OF THE CASE AND PROCEDURAL BACKGROUND**

The plaintiff, John Doe ("Doe"), has been an employee of Mylan Pharmaceuticals, Inc. ("Mylan") since June 18, 2007. He suffers from a seizure disorder, for which Mylan has provided reasonable accommodations since he first started having seizures at work in 2008. Doe's complaint alleges that he is able to perform his work with reasonable accommodations, including using slower machines, using machines that can shut off automatically and do not require

**DOE V. MYLAN PHARMACEUTICALS, INC.**                          1:16CV72

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO STRIKE, OR IN THE
ALTERNATIVE, MOTION TO DISMISS AMENDED COMPLAINT [DKT. NO. 22]**

climbing high ladders, and being visually checked on by others every 15 minutes when wearing respirator gear.

Doe suffered a seizure on March 5, 2015, following which he was off work until April 6, 2015. According to Doe, when he returned to work he gave Mylan two notes from his neurologist, dated March 25 and March 30, 2015, explaining that, although he could return to work on April 6, he was restricted from driving or operating heavy machinery for 6 months. Doe further alleges that although he requested that Mylan provide the same accommodations he had received in the past Mylan placed him on involuntary leave. After Mylan's Human Resources Manager refused to allow Doe to return to work until the restrictions imposed by his doctor had been lifted, Doe filed a complaint on May 2, 2015, with the West Virginia Human Rights Commission and the U.S. Equal Employment Opportunity Commission ("EEOC").

After he received another note from his physician, Doe tried to return to work on September 8, 2015. But because Mylan required more documentation from his physician, Doe did not actually return to work until September 24, 2015. He alleges that, as a consequence, he was forced to use accrued vacation leave during that interval in order to avoid incurring unpaid leave.

**DOE V. MYLAN PHARMACEUTICALS, INC.**                                             **1:16CV72**

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE, OR IN THE ALTERNATIVE, MOTION TO DISMISS AMENDED COMPLAINT [DKT. NO. 22]

Doe alleges that, even after he returned to work, Mylan continued to deny his disability accommodation requests. He further asserts that he had to wear a Tyvex suit and work on high ladders in rooms without padding or safety guards to protect him, even though other rooms were available where Mylan could have stationed him to work.

On December 17, 2015, one of the occasions when he was working in a Tyvex suit and helmet, Doe had a seizure that sent him to the hospital. The complaint alleges that, during the time of that seizure, Mylan was not monitoring him every 15 minutes while he was in the Tyvex suit, which Doe claims would have been the proper accommodation. Doe returned to work on December 28, 2015, after which he alleges Mylan continued to deny his requested accommodations.

According to the complaint, a doctor in Mylan's Medical Unit made comments to Doe about the complaint he had filed with the EEOC, which Doe interpreted as an attempt to threaten or discourage him from exercising his rights[1]. Doe also asserts that, on February 22, 2016, he requested that Mylan move him to another room as an

---

[1] Dr. Kinney said to Doe, "You're not going to sue me, are you?" and, "All that I've ever tried to do is just help you." (Dkt. No. 1-1 at 6).

**DOE V. MYLAN PHARMACEUTICALS, INC.** 1:16CV72

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO STRIKE, OR IN THE
ALTERNATIVE, MOTION TO DISMISS AMENDED COMPLAINT [DKT. NO. 22]**

accommodation. Although his supervisor complied, he later made public comments reflecting "a condescending and retaliatory attitude" toward the accommodation requests[2] (dkt. no. 1-1 at 6).

On February 19, 2016, the EEOC issued a Notice of Right to Sue under the ADA to Doe. On March 17, 2016, Doe filed a complaint in the Circuit Court of Monongalia County, West Virginia. Mylan removed the case to this Court (dkt. no. 1), and filed its answer on April 27, 2016 (dkt. no. 4).

The complaint asserted two counts against Mylan:

Count I: Failure to Reasonably Accommodate Disability in Violation of the West Virginia Human Rights Act

Count II: Violations of the Americans with Disabilities Act (discrimination and retaliation)

Doe sought a declaration that Mylan violated the West Virginia Human Rights Act ("WVHRA") and the Americans with Disabilities Act ("ADA"), and asked the Court to enjoin Mylan from discriminating based on disability. He further sought remedial relief, "including the extension of an offer of a position at [Doe's] customary rate of pay with retroactive seniority," as well as other compensatory

---

[2]The supervisor allegedly stated, "All right John, time to get to work! Get going!" (Dkt. No. 1-1 at 6).

**DOE V. MYLAN PHARMACEUTICALS, INC.**                         **1:16CV72**

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO STRIKE, OR IN THE
ALTERNATIVE, MOTION TO DISMISS AMENDED COMPLAINT [DKT. NO. 22]**

damages, attorney fees and costs, and any and all other just and equitable relief.

The Court conducted a scheduling conference on August 11, 2016, during which it established a deadline of August 29, 2016, for the parties to join additional parties or amend their pleadings. On August 30, 2016, Doe filed an amended complaint asserting an additional claim for "Violation of the Family and Medical Leave Act" ("FMLA") (dkt. no. 21).[3] On September 13, 2016, Mylan moved to strike the amended complaint because Doe had filed it one day past the deadline. In the alternative, it moved to dismiss the amended complaint for failure to state a claim (dkt. no. 22).

On February 21, 2017, the parties filed a joint motion to modify scheduling order and set scheduling conference (dkt. no. 32). The Court granted the motion and set a second scheduling conference for March 1, 2017 (dkt. no. 33). During that conference, the Court addressed the motion and, for the reasons stated on the record, **DENIED** Mylan's motion insofar as it sought to strike the

---

[3]Although the amended complaint labels Count III as a claim for interference and retaliation in violation of the FMLA, plaintiff conceded during the March 20, 2017, status conference that the claim was only for interference under the FMLA.

**DOE V. MYLAN PHARMACEUTICALS, INC.**                                    **1:16CV72**

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO STRIKE, OR IN THE
ALTERNATIVE, MOTION TO DISMISS AMENDED COMPLAINT [DKT. NO. 22]**

amended complaint. It also ordered additional briefing on Doe's FMLA interference claim and scheduled a status conference on March 20, 2017, to address the motion to dismiss and schedule the remainder of the case. After reviewing the additional briefing, and hearing argument from the parties during the March 20 status conference, the Court **GRANTED** Mylan' motion to dismiss Count III.

## II. STANDARD OF REVIEW

In reviewing the sufficiency of a complaint, a district court "'must accept as true all of the factual allegations contained in the complaint.'" Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). However, while a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Indeed, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). In considering whether the facts alleged are sufficient, a court must determine if a complaint contains "enough

**DOE V. MYLAN PHARMACEUTICALS, INC.**                                1:16CV72

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO STRIKE, OR IN THE
ALTERNATIVE, MOTION TO DISMISS AMENDED COMPLAINT [DKT. NO. 22]**

facts to state a claim to relief that is plausible on its face." Anderson, 508 F.3d at 188 (quoting Twombly, 550 U.S. at 547).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)," so long as "all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (quoting Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)).

### III. DISCUSSION

Count III of Doe's amended complaint alleges that Mylan interfered with the use of his FMLA leave by (1) "forcing him to use up his days of medical leave when he was not medically required to be off work"; and (2) "by prohibiting him from returning to work after he had requested that his FMLA days be preserved and after he had presented a slip from his doctor noting that his temporary

7

**DOE V. MYLAN PHARMACEUTICALS, INC.**                              **1:16CV72**

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO STRIKE, OR IN THE
ALTERNATIVE, MOTION TO DISMISS AMENDED COMPLAINT [DKT. NO. 22]**

accommodations were no longer required" (dkt. no. 22 at 1). Mylan argues that Doe has failed to state a claim for a violation of the FMLA and the claim therefore should be dismissed.

**A.**

Under the FMLA, an employee may take up "'to a total of 12 workweeks of leave during any 12-month period' when, inter alia, an employee is burdened with 'a serious health condition that makes the employee unable to perform' his job." Adams v. Anne Arundel County Public Schools, 789 F.3d 422, 426 (4th Cir. 2015) (quoting 29 U.S.C. § 2612(a)(1)(D)). "To make out an 'interference' claim under the FMLA, an employee must thus demonstrate that (1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm." Adams, 789 F.3d at 427 (citing Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002)).

Following any FMLA leave, "an employee has the right to reinstatement to his or her original position or an equivalent post." Vannoy v. Federal Reserve Bank of Richmond, 827 F.3d 296, 301 (4th Cir. 2016) (citing 29 U.S.C. § 2614(a)(1)). When reviewing FMLA claims, the Court may "inquire into matters such as whether

**DOE V. MYLAN PHARMACEUTICALS, INC.**                              **1:16CV72**

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO STRIKE, OR IN THE
ALTERNATIVE, MOTION TO DISMISS AMENDED COMPLAINT [DKT. NO. 22]**

the employee would have exercised his or her FMLA rights in the absence of the employer's actions." Id.

The parties do not dispute that Doe is entitled to an FMLA benefit. The question presented in Count III is whether Mylan interfered with Doe's use of his FMLA leave and, if so, whether that interference caused him harm. The crux of Doe's argument is that Mylan forced him to use his FMLA leave after it refused to allow him to return to work with accommodations on April 30, 2015, and again on September 8, 2015. This, however, does not state a claim of interference with Doe's exercise of his right to FMLA leave. Doe has not alleged that he sought FMLA leave and was denied, restrained, or otherwise prevented from using such leave. His complaint alleges that Mylan refused to allow him to return to work until after his doctor lifted his medical restrictions. Doe does not cite, nor could the Court find, any legal precedent supporting the contention that an employee's continuation on FMLA leave pending further assurances that the employee is safe to return to work supports a claim for interference with the employee's use of FMLA leave.

In addition, the amended complaint discusses only potential harms that could have occurred had Doe needed additional FMLA leave later in 2015. Establishing a claim of interference with FMLA

**DOE V. MYLAN PHARMACEUTICALS, INC.**                              1:16CV72

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO STRIKE, OR IN THE
ALTERNATIVE, MOTION TO DISMISS AMENDED COMPLAINT [DKT. NO. 22]**

leave, however, requires an allegation that the interference <u>caused</u> harm — not that it <u>could have</u> caused harm. <u>Adams</u>, 789 F.3d at 427; <u>see also</u>, <u>Zvosecz v. Country Club Ret. Ctr. IV, LLC</u>, 2015 WL 5074485 (S.D. Ohio Aug. 27, 2015) (discussing the failure of hypothetical future interference allegations to establish a valid claim of interference).

In his additional briefing, Doe argues that the FMLA provides "that employers may not induce employees to waive their prospective rights under the FMLA, such as by counting the time that an employee receives a job accommodation as FMLA leave." (Dkt. No. 37 at 1). This argument lacks merit.

Doe contends that, although Mylan was required to provide him with a reasonable accommodation, it denied him "[his] rights to his full twelve weeks of FMLA leave in 2015." <u>Id.</u> at 5-6. He cites 73 FR 67934, 67989 for the rule that "the time the employee works in the light duty assignment does not count as FMLA leave." Thus, he contends it was his choice either to take the light-duty assignment or the FMLA leave, and, because he wanted the light-duty assignment (i.e., an accommodation) and was denied, he was therefore forced to use FMLA leave. This is a misreading of the regulation, which simply provides that, if the employee <u>accepts</u> a light duty assignment <u>offered</u> by the employer, the employer cannot then count

**DOE V. MYLAN PHARMACEUTICALS, INC.** 1:16CV72

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO STRIKE, OR IN THE
ALTERNATIVE, MOTION TO DISMISS AMENDED COMPLAINT [DKT. NO. 22]**

that time against the employee's FMLA leave time. Thus, had Mylan offered Doe the light duty accommodation he requested, it could not have counted time in that position against his FMLA leave.

Citing the same section of the Federal Register, Doe argues that § 825.220(d) of the FMLA "prohibits the waiver or inducement of waiver of prospective rights under the FMLA, such as when an employee accepts a reasonable accommodation through a light duty job or other such on-the-job accommodation as required by the ADA." 73 FR 67934, 67989. Section 825.220(d) provides:

> Employees cannot waive, nor may employers induce employees to waive, their prospective rights under FMLA. For example, employees (or their collective bargaining representatives) cannot trade off the right to take FMLA leave against some other benefit offered by the employer. . . . Nor does it prevent an employee's voluntary and uncoerced acceptance (not as a condition of employment) of a light duty assignment while recovering from a serious health condition. See § 825.702(d). An employee's acceptance of such light duty assignment does not constitute a waiver of the employee's prospective rights, including the right to be restored to the same position the employee held at the time the employee's FMLA leave commenced or to an equivalent position. . . .

This regulation simply does not apply in this case. Doe never waived his rights to exercise his FMLA leave, nor does he allege that Mylan refused to reinstate him to his former position. Additionally, as noted above, Mylan could not have counted any time

**DOE V. MYLAN PHARMACEUTICALS, INC.**                           1:16CV72

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO STRIKE, OR IN THE
ALTERNATIVE, MOTION TO DISMISS AMENDED COMPLAINT [DKT. NO. 22]**

on light duty against Doe's FMLA leave as no such accommodation was offered to him.

The two cases on which Doe relies, Adams and Vannoy, do not support his claim. In Vannoy, the Fourth Circuit vacated the district court's grant of summary judgment because the plaintiff's employer "provid[ed] him defective notice that omitted his right to reinstatement at the conclusion of the medical leave term." 827 F.3d at 298. Although Vannoy had received 30 days of FMLA leave, he returned to work after just 5 days out of fear that his employer would not reinstate him if he took the entire leave. The court concluded that, even though the employer had granted Vannoy's FMLA leave request, the deficient notice he received raised a genuine issue of material fact as to whether Vannoy would have taken the entire 30 days had he known that the FMLA guaranteed his reinstatement. In the instant case, there is no allegation that Doe did not receive proper notice of his FMLA rights, or that, out of ignorance, he truncated his FMLA leave.

Likewise, Adams does not advance Doe's cause. Doe apparently relies on Adams to support his contention that a claim under the FMLA can still be properly pled even if the employer granted the employee all the FMLA leave to which he was entitled. (Dkt. No. 37 at 3). Although such a general and broad premise may be true, Adams

**DOE V. MYLAN PHARMACEUTICALS, INC.** 1:16CV72

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO STRIKE, OR IN THE
ALTERNATIVE, MOTION TO DISMISS AMENDED COMPLAINT [DKT. NO. 22]**

is highly distinguishable. Adams's interference claim was based on his allegations that his employer had set up roadblocks meant to discourage his use of FMLA leave, including requesting additional medical testing, investigating his claims, and requiring him to attend a meeting while on leave. 789 F.3d at 427. The Fourth Circuit ultimately found that the employer's actions did not rise to the level of interference with Adams's FMLA leave and, notably, made the following observation:

> We begin by noting one salient fact: Adams was not denied FMLA leave. In fact, he took three separate medical leaves totaling well over twelve weeks. The Supreme Court has observed that the "purpose of [an interference claim] is to permit a court to inquire into matters such as whether the employee would have exercised his or her FMLA rights in the absence of the employer's actions." Adams has not suggested that the Board denied him any FMLA leave he requested. On the contrary, Adams received more than the statutorily guaranteed amount.

Adams, 789 F.3d at 427(internal citation omitted). Here too, Mylan provided Doe with far more than 12 weeks of FMLA leave and he has never suggested that Mylan denied any FMLA leave he sought. What distinguishes Doe's case from Adams is the fact that he never alleges that Mylan put roadblocks up to his taking FMLA leave. Indeed, the record reflects that Mylan went out of its way not only to facilitate Doe's FMLA leave but to require it based on his medical conditions.

**DOE V. MYLAN PHARMACEUTICALS, INC.** 1:16CV72

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE, OR IN THE ALTERNATIVE, MOTION TO DISMISS AMENDED COMPLAINT [DKT. NO. 22]**

At bottom, adding Count III is an attempt by Doe to include an FMLA claim that is, at its essence, nothing more than his ADA claim. Nowhere does his amended complaint allege that Doe sought FMLA leave that Mylan either denied, interfered with, or otherwise hindered. His argument that, but for having been forced to use all of his FMLA leave, he would have been able to save it for further use later in 2015, is speculative at best, and unsupported by any allegation that at a particular time later in 2015 he needed or wanted to take FMLA leave but could not do so because Mylan had forced him to use it all.

## IV. CONCLUSION

In conclusion, the Court **DENIES** Mylan's motion to strike the amended complaint, **GRANTS** Mylan's motion to dismiss and **DISMISSES WITH PREJUDICE** Count III of the amended complaint.

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATED: March 30, 2017

/s/ Irene M. Keeley

IRENE M. KEELEY

UNITED STATES DISTRICT JUDGE