**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**JOHN DOE,**

      **Plaintiff,**

**v.**                  //    CIVIL ACTION No. 1:16CV72
                                    (Judge Keeley)

**MYLAN PHARMACEUTICALS, INC.,**

      **Defendant.**

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT
MYLAN'S MOTION FOR SUMMARY JUDGMENT [Dkt. No. 57]**

      The plaintiff, John Doe ("Doe"), has been an employee of defendant Mylan Pharmaceuticals, Inc. ("Mylan") since June of 2007. Doe filed this action in the Circuit Court of Monongalia County, West Virginia, on March 17, 2016, alleging that Mylan failed to afford him proper accommodations for his disability in violation of the Americans With Disabilities Act ("ADA") and the West Virginia Human Rights Act ("WVHRA")(dkt. no. 1-1). Mylan removed the case to this Court on April 27, 2016 (dkt. no. 1). Now pending is Mylan's motion for summary judgment, which is fully briefed and ripe for review (dkt. no. 57). For the reasons that follow, the Court **DENIES** the motion.

**I. FACTUAL BACKGROUND**

      Mylan is a manufacturer of generic pharmaceutical products. On or around June 18, 2017, Mylan hired Doe as a "Tablet Press

Operator" (dkt. no. 59-1 at 4-5), a position that requires the use of heavy machinery (dkt. no. 59-2).

Doe is a member of the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("Union")(dkt. no. 59-1 at 5). At all times relevant to this matter, the Union and Mylan were parties to a Collective Bargaining Agreement ("CBA"). Id. The CBA provides for temporary alternative work for employees who become physically unable to perform their job function(s) but who are qualified to perform another job function (dkt. no. 59-3).

Doe suffers from a seizure disorder and, since 2008, has experienced seizures while working at Mylan (dkt. no. 59-1 at 3). When Doe experienced a seizure in early 2012, Mylan accommodated him in accordance with medical restrictions related to driving commercial vehicles, working near moving machinery, and working on ladders or climbing (dkt. nos. 59-4 & 59-1 at 8-10).

In March of 2014, Doe suffered a seizure while at work (dkt. no. 59-8). Following that, on April 2, 2014, Dr. Palade, his treating physician, restricted Doe from driving and operating heavy/electrical machinery for six months (dkt. nos. 59-4 at 14 & 59-1 at 11-12). When Doe returned to work on April 7, 2014, Mylan accommodated his temporary inability to operate heavy machinery by

reassigning him to a position in the company's "Tool Room" for the duration of his six-month restriction (dkt. no. 59-1 at 12-13). On November 12, 2014, Doe was medically released from restricted duty and returned to his prior position as a Tablet Press Operator (dkt. no. 59-4 at 12).

Approximately one year after the seizure that resulted in his temporary reassignment to the Tool Room, on March 25, 2015, Doe experienced another seizure while at a rehabilitation center in Virginia (dkt. no. 59-4 at 5-6 & 59-1 at 14). Shortly thereafter, on March 30, 2015, Dr. Palade again restricted Doe from driving and working near heavy/electrical machinery for six months (dkt. nos. 59-4 at 11 & 59-1 at 14).

Because Doe's medical restrictions prevented him from operating the heavy machinery used in his position as a Tablet Press Operator, he requested a temporary reassignment to a position in the Tool Room (dkt. no. 59-5). Although Mylan had previously accommodated Doe's prior heavy machinery restriction by reassigning him to the Tool Room in 2014, Mylan did not grant the same requested accommodation in 2015, this time citing the seniority bidding provisions of the applicable CBA (dkt. no. 59-5).

As part of the CBA, Mylan employees must bid-in on certain "Protected Positions," including the position of Tool Room

**DOE v. MYLAN PHARMACEUTICALS, INC.**                      1:16CV72

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT
MYLAN'S MOTION FOR SUMMARY JUDGMENT [Dkt. No. 57]**

Attendant, which Doe requested, and Mylan denied, as an accommodation following his seizure in March of 2015 (dkt. nos. 59-3 & 59-5 at 3). The Tool Room Attendant position is filled according to Section 12.4 of the CBA, which provides that seniority, experience, work history, and other factors are considered when bidding for an open and available Tool Room Attendant position. Although Section 9.10 of the CBA allows Mylan employees to temporarily perform available work consistent with their medical restrictions, the provision is not a substitute for the bidding process required by Section 12.10 to fill permanent positions. Id.

According to James Brunette, Mylan's Senior Manager of Labor Relations, there was "not an open and available position" in the Tool Room when Doe requested reassignment there following his seizure in March of 2015. Id. Because Doe was restricted from using the heavy machinery necessary to perform his job as a Tablet Press Operator, and because Mylan denied his requested accommodation for reassignment as a Tool Belt Attendant, he applied for and was granted short-term and long-term disability (dkt. no. 59-1 at 19-20). He collected these benefits for approximately five months, until returning to work in September of 2015 (dkt. no. 59-1 at 74-75).

4

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT
MYLAN'S MOTION FOR SUMMARY JUDGMENT [Dkt. No. 57]**

On August 13, 2015, Doe's neurologist, Dr. Murray, indicated that Doe would be able to return to operating heavy machinery on September 5, 2015, "if he continue[d] to be seizure free" (dkt. no. 59-4 at 6). As of September 5, 2015, however, Mylan had not received confirmation from a physician that Doe had in fact remained seizure free, nor had it received any other release to return Doe to unrestricted duty (dkt. no. 59-5). On September 23, 2015, Dr. Cather released Doe to full duty with no restrictions (dkt. no. 59-4 at 5), and Doe returned to work as a Tablet Press Operator that same day (dkt. no. 59-1 at 30).

Approximately three months later, on December 17, 2015, Doe suffered another seizure while working at Mylan (dkt. no. 59-4 at 15). On December 24, 2015, Dr. Cather authorized Doe to return to work on December 28, 2015, with a recommended restriction that he not climb ladders (dkt. no. 59-4 at 4). Upon Doe's return to work, Mylan accommodated his restriction by allowing him to work with Tablet Press machines that did not require him to climb ladders (dkt. no. 59-1 at 26-27).

In early May of 2016, Doe took several weeks of leave from Mylan while suffering from adverse effects of prescription medication (dkt. no 59-1 at 23-24). On May 23, 2016, Dr. Cather informed Mylan that Doe could return to work without restriction,

5

other than that he still could not climb ladders. Id. On June 16, 2016, Dr. Cather further instructed that Doe was not to work at heights higher than, or be on ladders taller than, two feet as a permanent limitation (dkt. nos. 59-4 at 2 & 59-1 at 6-7). Since June of 2016, Mylan has accommodated Doe's permanent restriction with regard to climbing and ladders (dkt. no. 59-1 at 25, 29).

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., LLC v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining its truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

**DOE v. MYLAN PHARMACEUTICALS, INC.**                                        1:16CV72

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT MYLAN'S MOTION FOR SUMMARY JUDGMENT [Dkt. No. 57]**

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248–52.

### III. APPLICABLE LAW

**A.  Americans with Disability Act**

The Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq., prohibits an employer from discriminating against an "individual with a disability" who, with "reasonable accommodation," can perform the essential functions of the job. § 12112(a) and (b).

To state a claim for failure to accommodate under the ADA, the plaintiff must "demonstrate sufficient facts to permit a reasonable inference that (1) he had a disability; (2) the defendant had

7

notice of the disability; (3) he could perform the essential functions of his job with reasonable accommodation; and (4) the defendant refused to make such an accommodation." Garrett v. Aegis Communs. Grp., LLC, 2014 WL 2931882, *3 (N.D. W.Va June 30, 2014) (citing Mobley v. Advance Stores Co., 842 F.Supp.2d 866, 889 (E.D. Va. 2012)(internal citations omitted)).

Reasonable accommodation under the ADA may include "reassignment to a vacant position." See 29 U.S.C. 1630.2(o)(defining reasonable accommodation). An employer is not required, however, to reassign a disabled employee to a vacant position where the employer would be forced to abandon or otherwise violate the terms of a collective bargaining agreement in order to accommodate an employee with a disability. See U.S. Airways, Inc. v. Barnett, 535 U.S. 391 (2002).

In Barnett, the Supreme Court held that the ADA does not ordinarily require an employer to assign a disabled employee to a particular position where another employee is entitled to that position under the employer's "established seniority system." 535 U.S. at 405-06. In fact, an employer's showing that a disabled employee's requested accommodation would violate the rules of a seniority system "warrants summary judgment for the employer –

unless there is more." Id. Specifically, the plaintiff must present evidence that "special circumstances surround the particular case that demonstrate that the assignment is nonetheless reasonable." Id. In other words, the employee remains free to show that special circumstances warrant a finding that, despite the presence of a seniority system, the requested accommodation is "reasonable" on the particular facts of the case. Id. at 405. For example, special circumstances may exist where an employer departs from its seniority system fairly frequently, "reducing employee expectations that the system will be followed – to the point where one more departure, needed to accommodate an individual with a disability, will not likely make a difference." Id. In other words, an employee might establish the requisite "special circumstances" by showing that his employer's seniority system "already contains exceptions such that, in the circumstances, one further exception is unlikely to matter." Id.

**B.   West Virginia Human Rights Act**

To state a claim for breach of the duty of reasonable accommodation under the West Virginia Human Rights Act ("WVHRA"), the plaintiff must demonstrate: "(1) The plaintiff is a qualified person with a disability; (2) the employer was aware of the

9

disability; (3) the plaintiff required an accommodation in order to perform the essential functions of a job; (4) a reasonable accommodation existed that met the plaintiff's needs; (5) the employer knew or should have known of the plaintiff's need and of the accommodation; and (6) the employer failed to provide the accommodation." Kitchen, 552 F.Supp.2d at 593(quoting Syl. pt. 2, Skaggs v. Elk Run Coal Co., 479 S.E.2d 561 (W.Va. 1996)).

### IV. LEGAL ANALYSIS

Mylan seeks summary judgment on both Doe's ADA and WVHRA claims (dkt. no. 57). Mylan does not dispute that Doe has a disability or that Mylan had notice of it. Id. at 8. Rather, Mylan argues that there were times when Doe could not perform the essential functions of his job with reasonable accommodation. Id. Specifically, it argues that Doe's disability prevented him from performing essential functions of his job as a Tablet Press Operator and that it would have been unreasonable for Mylan to accommodate Doe by reassigning him to the Tool Room "every time" he had a seizure, or "for an indefinite period" of time, because such an accommodation would violate the seniority rights of other employees under the applicable CBA. Id.

**DOE v. MYLAN PHARMACEUTICALS, INC.**                               1:16CV72

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT
MYLAN'S MOTION FOR SUMMARY JUDGMENT [Dkt. No. 57]**

In his response brief, Doe argues that there are genuine issues of material fact as to whether Mylan could have reasonably accommodated Doe following his seizure in March, 2015 by reassigning him to the Tool Room (dkt. no. 60). In its reply brief, Mylan reasserts its position that Doe's failure to accommodate claims fail as a matter of law under both the ADA and the WVHRA because placing Doe in the Tool Room would have violated established seniority rights under the CBA (dkt. no 65).

For the reasons that follow, the Court finds that there are material facts in dispute and **DENIES** the motion.

**A.    Failure to Accommodate Under ADA**

It is undisputed that Doe, a Mylan employee, is an "individual with a disability" and that he requested reassignment to the Tool Room Attendant position as a "reasonable accommodation" for his disability. At issue is whether Doe's reassignment to the Tool Rom was a "reasonable" accommodation where such an assignment seemingly conflicts with Mylan's established seniority bidding system under the applicable CBA.

Under <u>Barnett</u>, an employer's showing that a disabled employee's requested assignment conflicts with an established seniority system is "ordinarily" sufficient to show that the

proposed accommodation is not reasonable. 535 U.S. 391, 406. However, the employee may nonetheless present evidence of "special circumstances" that makes an exception to the seniority system "reasonable" under the particular facts of the case. In order to meet his burden of showing special circumstances that make an exception to the seniority rules reasonable, the plaintiff must "explain, why, in the particular case, an exception to the employer's seniority policy can constitute a 'reasonable accommodation,' even though in an ordinary case it cannot." Id. at 406.

Here, Mylan has averred that Doe's requested reassignment to the Tool Room would violate the rules of the company's existing seniority bidding system under the CBA. Following his seizure on March 25, 2015, Doe requested reassignment to the Tool Room as an accommodation for his restriction against the use of heavy machinery, which left him unable to perform his job as a Tablet Press Operator. The position of Tool Room Attendant is protected under the CBA (dkt. no. 79-3 at 4). Accordingly, pursuant to Section 12.4 of the CBA, the Tool Room Attendant position is filled by "seniority and qualifications." Id.

Section 12.10 of the CBA specifically provides that, to temporarily fill an open Tool Room position, Senior Tablet Press

Operators with the most time in the department have priority to bid on the position, followed by Senior Tablet Press Operators by seniority, and finally, Tablet Press Operators based on their time in the department. Id. at 5. Accordingly, all Senior Tablet Press Operators would have a contractual right to work in the Tool Room prior to Doe, as well as all Tablet Press Operators with more time in the department. Id.

Despite Mylan's showing that Doe's requested accommodation would have violated the rules of its existing seniority system under the CBA, Doe can nonetheless avoid summary judgment by presenting evidence of special circumstances that make an exception to the seniority rules "reasonable" in this particular case. Barnett, 535 U.S. at 391. Here, Doe has put forth evidence that Mylan reduced its employees' expectations that the CBA's seniority system would be followed with regard to temporary placements for employees with disabilities. Specifically, Doe has shown that, prior to his 2015 request for reassignment to the Tool Room, Mylan had previously accommodated disabled employees, including Doe himself, by reassigning them to various positions within the company, without regard to the CBA's seniority bidding provisions.

Most notably, when Doe experienced a seizure in March of 2014 and was subsequently restricted from operating heavy machinery for

13

six months, Mylan temporarily reassigned him to the position of Tool Room Attendant - the very position to which Doe sought reassignment one year later after suffering a seizure in March, 2015 and being placed on the exact same work restrictions for the exact same period of time. Doe's position that special circumstances in the case warrant an exception to the seniority system is further supported by the affidavit of Dawn Golden, which states that, as reasonable accommodation for disability-based work restrictions, Mylan had reassigned her and other disabled employees to various positions in the company, without Mylan or the Union requiring them to bid on the jobs through the process outlined in the CBA (dkt. 64-1 at 2-3).

Construing these facts in the light most favorable to Doe, there is a genuine dispute as to whether Mylan had reduced its employees' expectations that the CBA's seniority system would be followed. Therefore, assuming that Doe's requested accommodation would be "reasonable" within the meaning of the ADA were it not for the fact that the assignment would violate the seniority provisions of the CBA, there is a factual question for the jury as to whether Doe's requested accommodation was "reasonable" under the circumstances of this particular case.

In addition to the role of the seniority system in determining the reasonableness of Doe's requested accommodation, the parties also dispute the availability of a Tool Room Attendant position at the time Doe requested placement there after his March, 2015 seizure. Mylan asserts that, at the time of Doe's request, there was not an open and available position in the Tool Room. Mylan attempts to distinguish the availability of such a position for Doe in 2014 from the alleged lack thereof in 2015 by asserting that Doe's first placement in the Tool Room was "to assist the incumbent employee with overflow duties" (dkt. no. 58 at 3). As pointed out by Doe, however, the portion of the record cited by Mylan for this proposition does not make clear that Doe's 2014 placement in the Tool Room was merely to "assist" another employee or that the position was associated solely with temporary "overflow duties" (dkt. no. 59-1 at 54-55). Accordingly, there is a genuine issue of material fact as to whether an open and available Tool Room position existed at the time Doe requested a second placement there.

Finally, the parties dispute the length and nature of Doe's requested accommodation. Within a few days of Doe's March 25, 2015, seizure, Dr. Palade restricted him from operating heavy machinery for six months from the date of the seizure(dkt. no. 59-4 at 10-

11). On August 13, 2015, Dr. Murray indicated that Doe would be able return to operating heavy machinery, and thus return to his position as a Tablet Press Operator, on September 5, 2015, so long as he did not have another seizure before then (dkt no. 5-4 at 6). Mylan asserts, however, that had it placed Doe in the Tool Room in May 2015 as he requested, he "would have held the position for at least 12 months or possibly longer" (dkt. no. 59-5 at 4). Under such circumstances, Section 12.2 CBA would have required Mylan to offer Doe the opportunity to remain in the Tool Room position on a permanent basis, thus circumventing the seniority bidding process as established in Sections 12.4 and 12.10 of the agreement, and thereby violating the rights of other Union employees with higher seniority status to bid on a Tool Room position. Accordingly, there is a genuine issue of material fact as to how long Doe would have required accommodation in the Tool Room position.

When these facts are viewed in the light most favorable to Doe, there are clearly material disputes that preclude judgment as a matter of law. The parties dispute whether Mylan had established a practice of assigning disabled employees to other positions without regard to the CBA's seniority bidding provisions. They also dispute the availability of an open and available position in the Tool Room at the time Doe requested placement there as an

16

accommodation for his medical restrictions. There also is a dispute concerning for how long Doe would have held the Tool Room position had he been placed there as requested. Thus, evidence is in contest as to whether a reasonable accommodation existed and whether Mylan failed to provide Doe with such an accommodation.

**B.   Failure to Accommodate Under WVHRA**

For the same reasons that Mylan's motion for summary judgment as to Doe's claim for failure to accommodate under the ADA, it must also be denied under the WVHRA. As discussed above, genuine issues of material fact exist as to whether a "reasonable" accommodation existed that met Doe's needs and as to whether Mylan failed to provide such an accommodation.

## V. CONCLUSION

For the reasons discussed, the defendant's motion for summary judgment (dkt. no. 57) is **DENIED**. The case will proceed to trial as scheduled.

It is so **ORDERED.**

The Court **DIRECTS** the Clerk of Court to transmit copies of this Order to counsel of record and to enter a separate judgment order.

DATED: October 13, 2017.

/s/ Irene M. Keeley<br>IRENE M. KEELEY<br>UNITED STATES DISTRICT JUDGE